## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES FLAKKER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 18-1046** |
| | : | |
| **NEW JERSEY TRANSIT RAIL** | : | |
| **OPERATIONS, INC.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                   **June 18, 2018**

This district court must follow a precedential opinion on point from our court of appeals regardless of whether the opinion is issued from a three judge or *en banc* panel. In January 2018, a three judge panel of our court of appeals reversed an earlier *en banc* opinion and held NJ Transit is immune from suit under the Eleventh Amendment. The court of appeals later declined to re-hear the appeal in an *en banc* panel. When a citizen then later sues NJ Transit under federal law after our court of appeals holding, he must explain why we are not bound to follow the law in this Circuit. When, as today, the plaintiff fails to do so and there is no basis to find either Congress abrogated or the state waived sovereign immunity for the claim, we will follow the precedential holding immunizing NJ Transit from a federal lawsuit. We grant the motion for judgment on the pleadings in the accompanying Order.

## I.     Material plead facts.

James Flakker sued his employer, New Jersey Transit Rail Operations, for retaliating against him for reporting an injury he suffered while working as a foreman in its railroad yard.[1]

Mr. Flakker alleges New Jersey Transit Rail Operation's retaliation violates the Federal Railroad Safety Act.[2]

## II.    Analysis

New Jersey Transit Rail Operation moves for judgment on pleadings arguing it is immune from Mr. Flakker's claim as a subsidiary of NJ Transit which enjoys sovereign immunity under the Eleventh Amendment.[3] NJ Transit also argues Congress did not abrogate states' sovereign immunity in the Whistleblower Provision of the Federal Rail Safety Act and NJ Transit does not waive its sovereign immunity or consent to be sued under the Whistleblower Provision of the Act.

Mr. Flakker does not dispute New Jersey Transit Rail Operation's status as a subsidiary of NJ Transit or dispute whether Congress abrogated sovereign immunity in the Federal Railroad Safety Act.[4] We earlier granted New Jersey Transit Rail Operation's motion on the merits but noted Mr. Flakker failed to timely oppose the motion. Five days after our Order and Memorandum, Mr. Flakker moved to vacate our judgment and requested an opportunity to respond to the judgment on the pleadings citing excusable neglect based on counsel's unexpected serious health crisis. We granted Mr. Flakker's motion so we could review with the benefit of Mr. Flakker's input.    Mr. Flakker promptly responded and attached an over 2,000 page appendix.[5] We carefully reviewed Mr. Flakker's response. While he raises facts not raised earlier, we are not persuaded by his argument and cannot decline following our court of appeals' opinion directly on point.

### A. NJ Transit is entitled to sovereign immunity as an arm of the state.

On January 11, 2018, our court of appeals decided *Karns v. Shanahan* holding NJ Transit is an arm of the State of New Jersey and "entitled to claim the protections of Eleventh

2

Amendment immunity, which in turn functions as an absolute bar to any claims … against NJ Transit…."[6] Our court of appeals in *Karns* reversed its 1989 *en banc* decision in *Fitchik v. New Jersey Transit Rail Operations, Inc.* which after balancing state-treasury funding, status under state law, and autonomy, held N.J. Transit is not entitled to Eleventh Amendment sovereign immunity.[7] Our court of appeals later denied the request for *en banc* rehearing of *Karns*.

In *Karns*, our court of appeals examined the same three factors as in *Fitchik* "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and, (3) what degree of autonomy the entity has" to determine if NJ Transit is an "arm of the state."[8] Our court of appeals noted, however, intervening Supreme Court caselaw changed the weighing of the three factors, meaning the first factor, funding, is no longer predominant but all three factors are now equal.[9]

Our court of appeals held the state-treasury funding factor weighs against finding sovereign immunity because NJ Transit "concedes that it is not entirely reliant on state funds but rather that it receives a 'combination of federal, state, and local funds' to balance its budget."[10] The second factor, status under state law, "strongly favor[ed]" finding sovereign immunity because NJ Transit is part of New Jersey's executive branch, New Jersey's statutes consider it an instrumentality of the State," its transit officers are vested with state police powers, and New Jersey state caselaw regards it as an agency of the state.[11] Our court of appeals commented in the twenty-eight years since *Fitchik* it "has become that much more apparent" New Jersey regards NJ Transit as an arm of the state.[12] For the third factor, "autonomy of the entity," our court of appeals agreed with *Fitchik* finding New Jersey's "fairly 'substantial control' over NJ Transit counseled in favor of according it Eleventh Amendment immunity."[13]

Our court of appeals then balanced the three factors finding "while the state-treasury factor counsels against awarding Eleventh Amendment immunity, the state law and autonomy factors both tilt in favor of immunity. Indeed, in the intervening years since our decision in *Fitchik*, it has become apparent that the state law factor weighs heavily in favor of a finding of immunity."[14] Our court of appeals concluded NJ Transit is an arm of the state and entitled to Eleventh Amendment immunity.[15]

Mr. Flakker argues we should not follow *Karns* because it is not an *en banc* decision so it cannot overrule the *en banc* decision *Fitchik*. He also argues *Karns* is not controlling because our court of appeals lacked a factual record and overruled *Fitchik* based on 1989 facts and failed to examine factual changes from then until 2018. Neither argument has merit.

*Karns* is a precedential opinion from our court of appeals. "It is axiomatic that a district court is bound to apply its appellate court's precedent."[16] In *Karns*, our court of appeals addressed Mr. Flakker's argument *Fitchik* is still precedential because it is *en banc*. Our court of appeals analyzed and found it was not bound by *Fitchik* because of intervening conflicting Supreme Court decisions. In *Karns*, our court of appeals addressed its general obligation to follow "precedent absent *en banc* reconsideration," however, "a panel may revisit a prior holding of the Court 'which conflicts with intervening Supreme Court precedent.'"[17] Our court of appeals held its "respect for the uniformity of decisions within [the Court of Appeals of the Third Circuit] therefore must succumb" because its *en banc* holding in *Fitchik*'s conflicts with Supreme Court's intervening decision in *Regents of the University of California*.[18] Mr. Flakker's argument *Fitchik* is still precedential only because it is *en banc* and *Karns* is not has no merit because the Supreme Court's decision "unquestionably presents an intervening shift in the

4

applicable Eleventh Amendment immunity analytical framework" meaning our court of appeals was "not bound to follow [its] prior balancing of the factors in *Fitchik*."[19]

Mr. Flakker's argument our court of appeals did not have a full factual record is also unpersuasive. Our court of appeals addressed intervening caselaw and facts since it decided *Fitchik*. In *Karns*, our court of appeals found two factors, the second and third, weighed in favor of finding sovereign immunity and outweighed the first factor. Besides vague assertions of a deficient factual record, Mr. Flakker failed to identify intervening facts, court decisions, or state laws not reviewed by our court of appeals in *Karns* which would change the outcome of one of the three factors. Mr. Flakker argued he should be allowed to conduct discovery to show a change in circumstances for NJ Transit since *Fitchik*. Mr. Flakker's request for discovery is futile because the analysis for the second and third factors rely on caselaw, statutes, and other public government records fully available to our court of appeals when it decided *Karns*. As for the first state-treasury funding factor, our court of appeals found this factor weighs against sovereign immunity, and NJ Transit concedes this fact here, making discovery futile because this factor already weighs in Mr. Flakker's favor.

In its analysis of the second factor, our court of appeals, after examining intervening cases and facts since *Fitchik*, reaffirmed this factor weighs in favor of sovereign immunity, noting its finding became "much more apparent since the original *Fitchik* decision."[20] As for the third factor, our court of appeals examined New Jersey's statutes relating to NJ Transit and reaffirmed these statutes show New Jersey exercises "substantial control" over NJ Transit and reaffirmed its holding this factor weighs in favor of sovereign immunity.[21]

"It is axiomatic" we are "bound to apply" our court of appeals' precedent and Mr. Flakker does not persuade us not to follow our court of appeals' January 2018 *Karns* decision.[22]

5

**B.      Congress did not abrogate sovereign immunity for the Whistleblower Provision of the Federal Railroad Safety Act.**

"[T]he Eleventh Amendment provides states with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens."[23] When it comes to immunity from federal suits under the Eleventh Amendment, New Jersey does not have an absolute right to claim immunity.[24] There are two exceptions to New Jersey's sovereign immunity from federal suit: "[f]irst, Congress may authorize such a suit under its power 'to enforce the Fourteenth Amendment—an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance. Second, a State may waive its sovereign immunity by consenting to suit."[25]

The first exception does not apply. Congress enacted the Whistleblower provision, § 20109, of the Federal Railroad Safety Act through its Article I Section XIII commerce clause powers and the provision protects employees of railroad carriers "engaged in interstate or foreign commerce" from retaliation based on an employee, among other things, reporting on violations of federal law, refusing to violate a federal law, and reporting work-related injuries.[26] Congress did not abrogate New Jersey's sovereign immunity from suits under § 20109 because it is enacted under Congress' commerce clause powers, not the Fourteenth Amendment and Congress makes no mention in the Act of abrogating states' sovereign immunity.

The second exception also does not apply because NJ Transit has not consented to be sued under the Whistleblower Provision of the Federal Railroad Safety Act. "A state waives its immunity 'if the State makes a 'clear declaration' that it intends to submit itself to our jurisdiction."[27] "The law requires a clear declaration *by the State* of its waiver to ensure that the State in fact consents to suit and because there is little reason to assume actual consent based upon the State's mere presence in the field subject to congressional regulation."[28]

6

Mr. Flakker does not identify conduct by NJ Transit/New Jersey Transit Rail Operation clearly waiving its sovereign immunity. In the record before us today, there is no "clear declaration" of NJ Transit's consent to this suit or its waiver of immunity. -Mr. Flakker sued New Jersey Transit Rail Operation so it is brought involuntarily before us.[29] We cannot find authority, and Mr. Flakker has not shown us authority, where NJ Transit or New Jersey Transit Rail Operation consented to suit under the Whistleblower Provision of Federal Railroad Safety Act.

NJ Transit, and its subsidiary New Jersey Transit Rail Operation, are immune from suit under the Whistleblower Provision of Federal Railroad Safety Act as Congress did not abrogate New Jersey's sovereign immunity and New Jersey did not waive its immunity or consent to be sued.

## III. Conclusion

In the accompanying Order, we follow our court of appeals in *Karns* and grant judgment on the pleadings to New Jersey Transit Rail Operation because it is an arm of the state of New Jersey and is entitled to sovereign immunity under the Eleventh Amendment from suits under the Whistleblower Provision of Federal Railroad Safety Act.

---

[1] Complaint, ECF Doc. No. 1, ¶¶ 9-13.

[2] 49 U.S.C. § 20109(a)(4).

[3] A party may move for judgment on the pleadings "[a]fter the pleadings are closed--but early enough not to delay trial..." Fed. R. Civ. P. 12(c). In so doing, "the moving party must show that no issues of material fact exist and that judgment should be entered in its favor as a matter of law." *Collinson v. City of Philadelphia, No.*, No. 12-6114, 2015 WL 221070, at *1 (E.D. Pa. Jan. 14, 2015) (quoting *S.B. v. United of Omaha Life Ins. Co.*, No. 13–1463, 2013 WL 2915973, at *3 (E.D. Pa. 2013)). The standard applied to motions under Rule 12(c) is the same standard as applied to motions to dismiss under Rule 12(b)(6). *Szczurek v. Prof'l Mgmt., Inc.*, No. 14-4790, 2014 WL 6388484, at *1 (E.D. Pa. Nov. 17, 2014). Rule 12(c) motion "should not be granted

7

unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 271 (3d Cir. 2014) (internal quotations and citations omitted).

[4] *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 664 (3d Cir. 1989) ("Since [New Jersey Transit Rail Operations] is a wholly owned subsidiary of [NJ Transit], any [E]leventh [A]mendment immunity conferred upon [New Jersey Transit Rail Operations] would be derivative of that possessed by [NJ Transit].").

[5] While we find we are bound by our court of appeals' holding NJ Transit is entitled Eleventh Amendment immunity in *Karns*, we also note, at a Rule 12 stage, we "consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record…" *O'Neill v. Chester Downs & Marina, LLC*, 2015 WL 5240045, at *2 (Sept. 8, 2015) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Mr. Flakker's Opposition attaches matters of public record, statutes, governing documents, and public reports so we did consider those attachments but find they do not overcome the court of appeals' analysis.

[6] 879 F.3d 504, 519 (3d Cir. 2018).

[7] 873 F.2d at 664.

[8] *Karns*, 879 F.3d at 513 (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2017) and citing *Fitchik*, 873 F.2d at 659)).

[9] *Id.* at 513-14 (citing *Regents of the University of California v. Doe*, 519 U.S. 425, 431 (1997)).

[10] *Id.* at 516.

[11] *Id.* at 517-518.

[12] *Id.* at 518.

[13] *Id.* (quoting *Fitchik*, 873 F.2d at 664)).

[14] *Id.* at 519.

[15] *Id.*

[16] *A.A. ex rel. E.A. v. Exeter Tp. School Dist.*, 485 F. Supp. 2d 587, 591 (E.D. Pa. 2007) (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984)).

[17] *Karns*, 879 F.3d at 514 (quoting *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009) and *In re Krebs*, 527 F.33d 82, 84 (3d Cir. 2008)).

[18] *Id.* at 515 (citing *United States v. Singletary*, 268 F.3d 196, 202 (3d Cir. 2001)).

[19] *Id.* (citing *Regents of the University of California*, 519 U.S. at 431).

[20] *Id.* at 518.

[21] *Id.*

[22] *See A.A.*, 485 F. Supp. 2d at 591 (citing *Poulis*, 747 F.2d at 867).

[23] *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 167 (3d Cir. 2002) (citing *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)).

[24] *See id.* at 168.

[25] *In re Flonase Antitrust Litigation*, 879 F.3d 61, 68 (3d Cir. 2017) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)). A third exception is not relevant today: "[A] private party may sue a state official to prevent the official from violating federal law." *Id.* at 69.

[26] § 20109(a)(1)-(9)

[27] *In re Flonase Antitrust Litigation*, 879 F.3d at 69 (quoting *Coll. Sav. Bank*, 527 U.S. at 675-76).

[28] *Id.* at 69 (quoting *Coll. Sav. Bank*, 527 U.S. at 680) (internal quotations omitted).

[29] *See Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 620 (2002) (finding a state defendant waived its sovereign immunity by removing the case to federal court because it voluntarily invoked our jurisdiction and distinguishing it from cases where a state defendant is sued and haled involuntarily into federal court).